Thank you, sir. May it please the court, my name is Kim Crump and I'm here on behalf of Michael Ecklin, the appellant in this case. There were three issues that we raised. One was whether the trial judge's interference was so prejudicial as to deny Michael Ecklin an opportunity for a fair and impartial trial. In addition, whether the government denied Mr. Ecklin a fair trial by offering misleading evidence such as gang affiliation, improper rebuttal and nondisclosed 404B evidence as well as perjured testimony of Dyron James. And starting with the first issue, we would like to address the issue of whether or not the judge's interference denied Mr. Ecklin a fair trial. And we would submit that based on the parameters set out in Casanova and Perotti that there's clearly plain error found throughout the case. The court interfered by interrupting, minimizing, criticizing defense and then reestablishing and bolstering the government's case. Why wouldn't you object to that? Well, we did object at one time to the court's questioning, but in a particular situation in front of a jury, it's often difficult to determine which battle you're going to fight. The battle of trying the case before the jury and not upsetting the court or the battle of setting a record for appeal. Well, it's almost, some of the questions the judge asked seem to have been an attempt maybe to help some dealing with it in a manner that you characterize it. And it would seem if the court is, seems to be predisposed to asking questions that matter, a simple thing, a courtesy to the court or just an acknowledgment would be, Your Honor, we'd like to have a moment with the court. May we approach the bench? And you would then make that out of the presence of the jury and then say I would like to include it on the record. But apparently you just let the judge just keep asking questions and you never said anything and he just kept asking. Well, Your Honor. You might have thought he was helping you or, you know, kind of helped the case along. Well, we understand that, but we certainly would note that with the analysis You understand what? That we did not make the objection. By using the plain error analysis, we would submit that we don't have to. We have to show that there's plain error that affected his substantial I understand that in terms of the plain error aspect of it, but I'm also trying to determine to what extent would this have been an attorney's strategy or is it something that you felt like maybe some of the questions were helping and then when it turned out that the verdict didn't come out the way you felt otherwise? I'm trying to assess what was going on in the trial because if you felt that strongly, because it does look like the trial judge he was asking a lot of questions here and I must admit it makes it difficult for the to bring it to the trial judge's attention. We'd like to give them a chance to correct something if they're continually doing it. And, Your Honor, we did. When it first started, it certainly didn't appear to be a problem, but as it continued, we did ask for sidebars and if, you know, if the court would And on the record? Yes, sir. We asked to approach the bench several times. You made objections? And we made objections. We asked the court So you did object to the testimony? We did and we objected to some of the things that were happening, but we were met with resistance throughout. And in a jury trial, you certainly don't want to, in the presence of the jury, look like you're the person who is stringing a case out, especially if the judge has made negative comments because each time the defense says, Your Honor, will you So we initially started out not making objection, but then asking the court could we approach so that we could raise issues outside of the presence of the jury, but the court was resistant several times. And we would say, Your Honor, can we approach? What now? And we know that we mentioned in our reply brief that one of the tailing examples of the court's tone was when the clerk alerted the court that counsel If you were making every effort to object and the court wasn't giving you the opportunity to do so, and that to object would put you in a position that it would look bad for the jury, and essentially you have what seems to be characterized as a continuing objection, why would you argue for plain error then? Why not just error, saying you objected? Well, Your Honor, we What was prevented from objecting? We actually argued plain error because in the absence of continuously objecting, I think it's clear. I mean, you can make the argument that yes, we made the objection and it's not plain error, it's harmless error, but we would submit that, you know, in the broadest sense, even under plain error, I think the record is replete with examples of how the court's prevented him from getting a fair trial. And with the case law cited in the brief, we have indicated numerous examples that there was plain error. Now the other question is whether his rights were substantially affected, and we would submit to the court that they were. He was denied a right to confront and cross-examine witnesses. He was denied his right to be presumed innocent. He was denied his right to an impartial tribunal. He was denied his right to have the jury, as opposed to the judge, determine the relevant facts. He was denied his right to proper instructions. So certainly we have numerous indications. And lastly, whether the outcome Excuse me. Tell me where he was denied the right of cross-examination. Your Honor, when we were trying to cross-examine several of the witnesses, one in particular, Mr. Dreon Wallace, on his interaction with Mr. Eklund as the aunt and the cousin approach, as well as what happened between him and Daquan, the individual that was there to break up the altercation or prevent him from using the gun, the court wouldn't allow it. Particularly he said, I'm not going to allow you to cross-examine this witness several times, and I'm running out of time. May I complete? Can you refer to a point of the joint appendix where that took place? Your Honor, I'd have to go back and get it. All right. Why don't you sit down and maybe you can address that on your rebuttal. I can certainly. On rebuttal, you can address that on rebuttal. Okay. Thank you. Thank you. Mr. Watson. May it please the Court. Paul Watson for Khalid Muhammad Carter. This was a trial of a fairly simple set of facts. The court on March 13, 2011. There wasn't much doubt of how it started. That was an argument and a physical confrontation between Michael Eklund and Tiara Falcon. And no dispute about how it ended in a gunfight. And there was not a lot of dispute about several other things that happened between those two events. What was disputed is who brandished the weapon first. And it came down to a pure credibility contest between Drayon Wallace, who was just about the only prosecution witness who absolutely said that Mr. Eklund produced a gun first, and several of the defense witnesses. And in this particular type of case, it's particularly damaging when the trial court cross-examines and intensely questions the defense witnesses time and time again. The jury is looking to the trial judge for direction in the case. The trial judge is pretty much the only person the jury believes and knows is going to direct them truthfully. Everybody else has some type of motivation, whether they be parties, witnesses, or attorneys. And in this case, the trial judge directed the jury to disbelieve the defendants and the defense witnesses. For example, in questioning Mr. Eklund, the trial court said, oh, he shot up his own car. Of course, it's hard to read into the transcript the exact tone of what was said, but I would point out that that is obviously a somewhat sarcastic statement. And then that was stated an additional two times in the next few pages. And then the trial judge also went into extensive questioning and actual cross-examination of Mr. Eklund. With regard to Mr. Carter, my client, the trial court actually said, the gang you were convicted of, does it have guns? And then engaged in cross-examination using leading questions from Mr. Carter. And your answer for not objecting to this during the course of the trial is the same as Ms. Crump? Yes, sir. I would also point out to the court with regard to a separate argument, when I did object in closing to the Assistant United States Attorney stating that his witnesses basically did not have criminal records, the court, I believe this is a direct quote, said to me, I'm tired of these conferences, I'm disgusted with this, now get back there  That was, I would suggest to the court, the general tone throughout the trial. The trial did take longer and had some delays that were unexpected, but there was considerable, well, I would just say that that statement captures the tone of the trial court in the case. I'm just thinking about a case like this, it's been a long time since I've tried cases, and I can very well understand your position, but if you continually object, the trial judge is asking these questions, it becomes apparent to everybody in the courtroom something is happening here that ought not be happening. And when it comes on appeal, it looks very stark when it comes up here and you've got this trial judge continually asking questions that deal with the credibility of the witnesses, and I guess I'm having some odds  and says nothing because you think the jury is going to be intimidated, but what he's asking is going to convince the jury from your perspective. Of course, what you got to lose? If you let the judge keep asking these questions, you're going to lose this case, it looks like to me, but you don't say anything. Well, it was a decision made during the trial not to object to the judge asking the questions. Oftentimes, the jury sees that as interference and does not... But you did it on purpose, not to object. It wasn't like you just... You made a strategic decision not to object, but even after it was over, you didn't say, Your Honor, I guess you moved for a mistrial based on this basis. Yes, sir. And of course, he denied that. Well, I would also point out that... Even if it's... If it's plain error, is it still subject to harmless error review? I guess it... Well, obviously, plain error... We still could look at this and say, Well, there's evidence overwhelming otherwise it was introduced that would uphold the cert. Yes, sir. My understanding of the case law is that even if it's plain error, the court could apply that analysis to it, but would suggest in this particular case, with the case coming down to a pure credibility contest between the two sides, obviously, and the judge basically weighing in on that credibility contest, that this particular case, it is obviously not harmless error. With regard to the closing, which I briefly referenced before, the assistant U.S. attorney stated that his witnesses had minimal or no criminal history and would assert that that, in and of itself, in a credibility case such as this, was particularly harmful and is not harmless error, and the judge did allow that. And this whole harmless error business review goes not to the charges, because it's clear they both admit to possessing it, their felons, all of those elements, is this justification defense. Yes, sir. Well, I'm sorry, I'm not sure I understood that question. This is all about a justification defense. Yes, sir, it is. Without that, they're guilty. Yes, sir, they both testified that they did possess the weapon. The question is whether there was this evidence of the justification defense that would make this not harmless error. Yes, sir. This is an unusual case in that what we're arguing about is whether the judge prejudiced the juror with regard to the justification defense, not whether they actually possessed the weapons in the first place. Thank you, Mr. Ponson. Mr. Hatch. May it please the court, Ben Hatch on behalf of the United States. Your honors, I'd like to go right to Judge Wynn's questions and particularly about the failure to object. The law appreciates any trial attorney, government, or defense is in an awkward position if the judge, obviously, coming from a position of authority, is asking questions, and that's why Rule 614, which authorizes the judge to ask questions of witnesses, and 614C authorizes either party to either object contemporaneously or to object at the next available time outside the presence of the jury. That rule is pretty clear, and that's a good rule. I've seen that used a lot of times for clarification, and where you need something explained, it's kind of confusing. You've got something a little different here in this case here, in terms of the number of cases that I suppose you trial a lot of cases. I do my best. Is this usual for a trial judge? This record is replete with a lot of ... It's almost like you didn't need you guys there. Is it usual for what was going on here? I would say it's not unusual for some of the judges we have down in Norfolk. I think as the law in the various cases, and I think there's no issue really about the law here and what the parameters are, but it appreciates that with the common objective of a fair and just trial there's going to be different styles to get there. In the Eastern District, I've worked in Alexandria, Richmond, and now I'm in a Norfolk office, so I've covered all the judges at one point or another. To me, it's not kind of out of the bell curve, if you will. It's understood if it's a bench trial, but when you have a jury up, and you've got a judge up here with a robe on and asking questions, and one of the things the record can't reflect is the voice inflection, the look, or the things in which the judge, that's the danger that the cases seem to indicate that the problem is on cases like this is that you don't get in. You've got counsel here. Let them try their case, and if there's something genuinely that needs some further, because it's really confusing what the guy is trying to say, and you're trying to help him get out his, you know, that's one thing, but to ask pointed questions and then to challenge directly, there's a few times he actually challenged directly whether he's telling the truth. The witnesses, is that, I mean, doesn't that cross it a little bit? Well, if I try to address everything Your Honor said, and Okay, I'll start with the last point. I take it Your Honor is referring to a couple of the questions that were the court directed to the defendants, Eklund and Carter at points, and the thing I'd say about those, and I know as members of this panel are familiar, there's been the Gary's decision and some other decisions that are out there, particular to this court, and the thing I'd say about those questions is unlike some of the ones that I think the court was troubled with in Gary's, is they began, I think if you look at almost every one of those exchanges, they began as a non-leading question, attempting, you know, the one that was objected to, the one that was objected to, the questioning of Mr. Eklund, began essentially as a summary of what he'd said, and what I'd say, Judge Winn, in this case, is there was a lot of difficult witnesses, and I think if, and I've read this record backwards and front, the court dished out questions to almost every witness, government or defense, and the court gave guidance to every attorney of government and defense, so I think there was a fairly even hand, but these witnesses, you know, one of the government's witnesses had to be arrested the first day of trial, several of the defense witnesses, I think there was challenges of focused, direct, and, you know, the court even gave Mr. Watson the authority to lead one of the witnesses, so, one of the defense witnesses, so what I would say, as to Mr. Eklund, was the court was getting in there trying to summarize, at the beginning of that exchange, the series of events that he had described, which was a bit chaotic, as anyone would expect in a gunfight, and it was only when Mr. Eklund made this claim, in summary question, that the man he was shooting at, from the judge, but again the intro question, which is my focus to begin with, your honor, is this is your testimony, and that would all have made sense from the defendant's standpoint that is, were these questions was it, you had a witness on the stand, and you have the prosecution ask questions, whoever is doing the direct, whether it's the defendant or the prosecution, and then you have to cross you have to redirect or cross or whatever, and then the judge then asked questions, or did he just, I mean for the transcript it looked like he just jumped in the middle of it and you might have had those questions on your pad over there, you might want to ask those questions, but he sort of took over and helped you out there you know, asking these questions, you were going to ask those questions anyway, weren't you? Well, I wasn't trying it, your honor but tell me well, you would think that the person trying it would probably, I think that these were that's another point I'd make, I think that these were legitimate questions about facts of the case. Why not let the counsel ask those questions or give them a chance to try the case then get in and try it for them well, the best I can say to that, your honor, I mean the judge the judge picked his moments, he's a very experienced trial judge and there were times that's what brings to mind, this is deliberate that's exactly right he knows what he's doing, he knows what this is, he's done trials many times and that's, I mean, this is not an inquisition where you just, everybody just asks questions indiscriminately, that's not the purpose of a jury trial and it's and I'm troubled by that aspect of it, but one way or the other, but it's just troubled me when I see a case like this, where the judge is, I mean it's very pointed questions, that's about whether you're in a gang, does this gang have guns and where does that come from? Well, I think your honor, I mean again, not to speak for the judge, but my reading of the record where that question would have come from is that Mr. Carter had claimed he didn't know what type of firearm he had picked up that he observed in the hallway of the building. The judge didn't believe him so the judge decided, I'm gonna ask some questions and flesh out, you know, for the jury and for myself, that you can't be right on this, so he's proving he's lying or at least giving some indication of it right? Well, I think the gentleman had said, and I mean I'd submit to the court, I've done several cases with AK-47s, they are one of the most distinct weapons that there is, most widely known and so when the gentleman testified that he had no idea what this weapon was and he didn't deal in weapons, was his testimony and I think the question went to that, to say do you know about weapons? I don't dispute it was going to ask about the facts of the case that he had testified about and it was limited in nature, Your Honor and again, it wasn't objected to and so I think that this court's decision say, again different styles, the ultimate benchmark is, does it deprive them of a fair trial and in particular when it's plain error, is there other evidence to support the verdict? I'd submit there is. In our analysis of the plain error, could we find plain error and go on to find that nonetheless it was harmless? Well, under the plain error analysis which we'd offer it has to have been error it has to have been plain, that is obvious to the judge and then when we go on that it's not kind of in the same words as harmlessness but the third prong if you shown those is whether it affected their substantial rights and that inquiry here is really they bear the burden under plain error of that under harmless error, usually the government would under plain error, they bear the burden I just need a clarification on that from your perspective so if we found all three including the third one does there still exist that opportunity or at least the was the other evidence that was presented so overwhelming that this is harmless? Yes, your honor, yes, I think that consideration can factor both into the third element of plain error or into the fourth, that is whether it affected the fairness, integrity of the proceedings and your honors, again, because I didn't try this case, I like to think I'm very prepared on all my cases, but I really went through this record, you did try it, the previous case, the counsel had tried it, it helps a lot when you say, you know that you know what happened below, I know you asked one question on the sentencing the judge enhanced the sentence based upon the credibility factors and they said he perjured himself or he was lying on the stand and what is not really argued, but I'm trying to understand, there seems to be something wrong with that, if the basis for the credibility comes from his questions, in other words, he's the one, he didn't believe him during the trial, you can tell it from his statements and then he punishes them based on questions he's asked. Your honor, I'm not sure that the basis I think Mr. Watson through his direct elicited because remember, if Mr. Carter, the challenge of this defense for them is that you can't possess that gun, I mean honestly, I don't even think this fits even under their version within a justification defense honestly, but we didn't oppose the instruction, let them make their argument it was given, but the challenge is you can't possess that gun one second before the exigency arises and so which is a difficult challenge and obviously we didn't find his testimony credible the way I think he went about that is to say I just observed an AK-47 by happenstance before this, and I believe that was his story, whether Judge Dumar brought out a particular part of that or not, that was his story, it had to be let me make sure I understand, you're saying because he said he didn't possess or just observed before that that's problematic if he admits it that he's I mean, isn't that kind of an incrimination thing I mean, he's a felon, and you're trying to get him to say I possessed a gun before No, your honor, I'm suggesting that's why he had to craft his testimony the way he did, because if he's walking along with this gun, I mean let's be honest, an AK-47 was not sitting on the floor of that housing area I just think that's patently clear his challenge, of course, is if I'm walking along or I know and I have constructive possession of the gun before this alleged altercation occurs, I'm guilty of being a felon in possession because I have no justification That's why I keep asking about this harmless error, because it just seems to me that kind of flows, what you just said it's kind of hard to say there's going to be a justification because all of you, the charges possess it it did not appear out of thin air so I mean that's why I'm getting at that harmless error I think it is harmless, your honor that is another argument that we have our witnesses established that they brought out this gun obviously had it in advance the inference from the whole circumstance so there's no harm to it the other part of justification, to go to the court's harmlessness point is the third prong of justification is of course I have to avail myself of any other legal alternative to what I could do and the obvious one in this case was just walk away, okay you're in a public place they were able to run away right after this back away from this situation so you could just walk away and so I respectfully disagree with Mr. Watson that it's a pure credibility determination I think the jury could have looked at this and said you know, there's a lot of testimony but at the end of the day it didn't justify you bringing an AK-47 out there and firing off near 20 rounds in a crowded housing area Did the court question the government witnesses like this? It did, your honor, at various points, and you know, the government witnesses, again, one of the individuals had to be arrested, your honor, another one Miss Falcone I would say was a significant divergence in areas from her grand but they were obviously the government witnesses but the court went in and questioned them at various points even utilizing grand jury testimony to the aid of the defense council and this was an area, again, I say it went both ways, both sides in the court's view, and I think it was correct under the law of evidence both sides exhibited some difficulties at times, laying the proper foundation and then proceeding to impeach with grand jury testimony but the court never stood in the way of proper impeachment, it said that repeatedly in the record, you've just got to do it the right way, you lay the foundation the current inconsistent statement and then you ask if on a previous day, they made an inconsistent statement, and that's exactly right under the rules of evidence it was just that it became a habitual problem that it was not being accomplished correctly, and I think that that's why the judge ruled, and if I could just say Ms. Crump in response to the court's questions said that at these various sidebars they were making objections, and I would respectfully disagree with that again, going through this whole record, they raise issues with almost everything, so you've got to look at the whole thing the sidebars were for particular points about whether it be impeachment by a prior inconsistent statement whether it be leading questions, they weren't about this general issue the court asking questions that was only, and in fact, Judge Dumar was the one who prompted Ms. Crump even on that occasion to say, are you objecting, and she said yes so these sidebars were for discrete evidentiary issues, and they really didn't go to the court's questioning and the final thing I'd say about the court's questioning is Judge Wynn, you made the point that the court would interject at various times, whether it be during direct or cross, but the court always would tender the witness to both questions, and say, have I raised any issues for either party and if it had, and there were a few times each side was given an opportunity to ask follow-up questions and so, what more opportunity can you have, have I raised any issues, if you're going to object the law doesn't let you doesn't let you just sit there and say nothing, and then try to undo it all later your honors, I would also like to make the point one of the questions that Ms. Crump raised was that they weren't allowed to question Mr. Wallace, obviously an important witness but, what the judge was doing was just managing the trial, the government was putting on affirmative evidence as to the offense, felon in possession, the defense was entirely able to put on its own case at the appropriate time, as to justification but that comes in the defense case and that's what Judge Dumar said, he specifically said with Mr. Wallace, you can call him in your case, if you want to talk about the justification defense the time here is for cross-examination of Mr. Wallace as to what he just testified about, so the court was just ordering ordering the order of witnesses and even in Ms. Crump's brief, she says the questioning went to the justification defense, not to questioning or impeaching the testimony on a direct Mr. Watson said that Mr. Roundtree in his closing made this reference to Ms. Falcone not having a criminal history, or not having any criminal convictions, and that he wasn't allowed to object your honors, again respectfully what the transcripts, what the joint appendix shows is Mr. Watson, after Mr. Roundtree was done, came up and said, you know, I do object to that testimony, Judge Dumar said well you didn't object in a timely fashion, you need to object when it happens and I think that that's not, that's significant and this is different from court questioning where you're allowed to object later we make no dispute, it turned out that wasn't in the record, we made no dispute of that in our brief, it was an unintentional reference by Mr. Roundtree in a long closing, he didn't come back to it, if Mr. Watson had objected in a timely manner I'm quite certain Mr. Roundtree would have said, excuse me, I misspoke on that there's no evidence of that, I mean that's why you need timely objections, so you can correct it at the time and the court even said to Mr. Watson, well you can correct it in your closing, because this wasn't in rebuttal, it wasn't the last thing the jury heard it was in Mr. Roundtree's initial close, so there was every opportunity to address it they chose not to, and I think that reflects that it wasn't a significant issue, of the three eyewitnesses the government had, Ms. Falcone was obviously the least significant Ms. Bonds and Mr. Wallace were much more significant and the last thing Judge Wynn, on this point of the judge's questioning, when I picked up the joint appendix in this case Mr. Roundtree, by the way got called up to active duty and that's why he can't be here today, so that's unfortunate, but when I went through it, it is unfortunate that apparently the entire jury instructions weren't included in the joint appendix, because  they ought to alleviate it, the court multiple times instructed the jury in fact, by my count, and I have the full set, I ordered the full transcript I can hand it to the court today, or if the court wants, we can file a supplemental joint appendix but the court twice said do not take any of the the court's comments as reflecting opinions, the court's just trying to clarify the standard types of instructions this court's familiar with, that was at pages 128 and 133 of the full transcript of those instructions also made similar instructions about not assuming any admonishment of counsel reflected any views of the court, mostly that was done at sidebar in any event and then also respectfully I know it hasn't come up, but the claims made by the defense that reasonable doubt, presumption of innocence, and burden of proof instructions weren't given I don't know if there was just some unclarity, but those are all in those instructions, the court instructs on reasonable doubt the government bears the burden of proof beyond a reasonable doubt, must prove all these elements beyond a reasonable doubt I'm sorry your honor yes your honor, it does, the presumption of innocence yeah, that's on page 134 of the full set, and if your honor is like I have copies for everyone, I can hand them up but that's on page 134 the defendants are presumed innocent they begin the trial with no evidence against them and these are all standard type instructions, so I don't know if that was a product of parts being removed or what the issue is, but if the court had any interest in that issue, I'd ask it to, I will submit the full instructions, and I submit they would alleviate that issue your honor, just in closing, if there's no more issues, this was a very serious offense, these two gentlemen were extremely dangerous multiple time convicts engaged in extremely violent behavior I think it was a trial that presented issues for the judge to manage with witnesses and you know, the court said before no trial is perfect, but the ultimate benchmark is, was this a fair and just trial, and I'd submit that at the end of the day, it was thank you your honors Ms. Hatch, Ms. Croft Thank you, if I could just address Judge Hamilton's question on page 288, in regards to what time one instance in which the judge instructed the witness not to answer, I was questioning Mr. Wallace about any contact he had with Daquan, or if he recall him being out there when the confrontation occurred and the court basically said, don't answer the question and there were other instances in which that happened with witnesses. Did he say why he told him not to answer the question? He just said we went over this Ms. Crump, don't answer the question but as I've indicated in the brief, the whole issue about Daquan and his interaction with Mr. Wallace to stop him from you know shooting at Mr. Eklund was not allowed by the court and we have pointed out in our brief that it was day two of the trial that most of the testimony occurred except for the defendant's testimony and the defense didn't start until four, so as part of cross-examination we would be entitled to be able to impeach the witness and we indicated to the court in the sidebar if Mr. Wallace denied it, that's fine, but if we have witnesses to say otherwise, it goes to his credibility, but the court would not allow questions about the conflict that started with Ms. Falcon, that continued with Ms. Bonds, as well as Mr. Wallace, which really went specifically to the justification defense and it's our position that we didn't have to wait until we started our case to introduce that evidence we would submit to the court that, but for the judge's interference the jury would have had evidence to support the justification defense which we believe we were hampered in presenting and would have found my client, Mr. Eklund, not guilty. Ms. Crump, was it you or your co-counsel that belays that the judge did not charge on reasonable doubt, presumption of innocence and burden of proof? It was my allegation, Your Honor. Do you stand by that? I do stand by that and I did note in my reply brief that it was the government that asked to take it out and it wasn't until after Your position is the judge did not charge presumption of innocence to the jury? He did not. He made reference to reasonable doubt, but that instruction was taken out and I would just submit to the court that when you're looking at the reasonable doubt presumption, one of the last things that's mentioned is if the jury views the evidence to permit two conclusions, one of innocence and one of guilt, they have to adopt innocence. That's a crucial instruction. So the mayor mentioned that the government has the burden of proof around a reasonable doubt. It's not enough. And the court instructed that the burden shifted to the defense which is not true. We have to prove an affirmative defense but the ultimate burden always lies with the commonwealth. And for that reason, we would ask that the court vacate the sentence and remand it back to be tried before a different judge. I want to ask one question, a couple questions on this justification defense you presented. Your client is in this altercation and the other person points a gun at your client. Yes sir. And then your client then what's the time, what happens then? What's the sequence? What happened was once Mr. Wallace approached my client, his friend Daquan who is out there, which is corroborated by Ms. Barnes who doesn't know him, says he has a gun. There is some communication briefly, Mr. Wallace points the gun at my client, Daquan Where is he standing when he points the gun at him? He's right in front of him. The two of them right there. It's Mr. Wallace in front of my client. Pointing a gun at your client. Pointing a gun at my client. Your client reacts by? Immediately he doesn't do anything because his friend Daquan intervenes and he's getting into a tussle with Mr. Wallace to get the gun. My client then backs up. He starts backing up and as he's backing up Mr. Wallace and Mr. Daquan are fighting over the gun and he's watching this. So at that time is your client in a position to leave? No he's not, Your Honor. Our position is he was still under an imminent threat because this guy was... But he's fighting with the other guy. He's fighting with the guy but he's wielding a gun. So his focus is on the guy he's fighting with. I'm wondering, is he out in an open field or is he around buildings? There is in a parking lot in a very, you know, small area. Probably this area in the courtroom. And so my client is still under an imminent threat because the guy is wielding a gun. At any point in time he could shoot him. So he's backing up to get out of the harm's way but he can't. How does that kill the threat if he gets a gun? Or if he even seeks to get a gun. How's that going to kill the threat? I'm trying to figure out how that works. His attempt to kill the threat was to shoot in the air in hopes that the other guy would run away. But he didn't. He immediately started firing at my client. But the other guy could run away and you just told me your client couldn't run away because that wouldn't kill the threat. So the other guy wouldn't run away either for the same basis. The other guy did run away once my client shot in the air. But I would submit to the court that my client was under a threat throughout. He's watching this guy Mr. Wallace pointing a gun trying to shoot at him and his friend trying to stop him. So the imminent threat is still there because at any time Mr. Wallace could shoot my client. My client's backing up. Unbeknownst to him, Mr. Carter gives him a gun. At which time there are other people out there. At which time my client trying to defray the situation shoots in the air. Daquan runs away. He breaks apart from Mr. Wallace. One last question on this. When your client approaches Mr. Wallace, does he already have the information that Mr. Wallace may have a gun? No. At the time Mr. Wallace approached my client. It was Mr. Wallace, Ms. Bonds and Ms. Falcon. They all approached him because they were fussing about him touching Ms. Falcon. At the time immediately he didn't see it. But his friend alerted him he has a gun. And immediately... What did he do? It all happened so quickly. The next thing that happens is there is some comment made about don't touch my cousin. What did he do? Did he leave? He couldn't leave because the guy immediately pulled the gun out. You told me there were comments. He said something to him about don't touch my cousin. The guy sees the gun and immediately as he sees the gun he's taking it out. You're confusing me a little bit. He says something about don't touch my cousin. Your client says that. No. Mr. Wallace says that to my client. Don't touch my cousin, Tiara. And so Mr. Daquan sees the gun and as they're communicating he's reaching, pulling it out and immediately it appears that Mr. Daquan saw the gun right before Wallace pulled it out and pointed it at Eklund. And so Eklund's backing up. Daquan's fighting with Mr. Wallace and then Mr. Carter runs up, he runs up with the gun. My client grabs it, shoots it in the air hoping that it would just break it up. It doesn't. Daquan runs and immediately Wallace starts shooting at my client. So we would submit to the court he was under a constant imminent threat of harm and that he did not do anything to place himself in that situation. Ms. Crump, in your brief do you raise the question about the district court not charging the presumption of innocence? At the time I did not realize that instruction had been taken out and I will submit to the court that was error on my part but the court gave us his drafted instructions immediately before closing arguments. We didn't have an opportunity to go through what the court had changed. It's not in your brief. It is in my brief. I did raise the issue that the instruction was removed. I don't have your brief. Would you refer me to the page of that? Okay. If you would look on in my reply brief on page 3 I indicate that Page what? Page 3 on the reply brief I indicated that in response to the government's statement that the instructions were given I indicate without belaboring the point it is clear from the record that no jury instructions were given to the jury on these areas of law. Noted within the appendix the court removed these instructions at the government's suggestion which is at Joint Appendix 515 and the court thereafter shifted the burden of proof to the defendants during the instruction phase and references to that is contained within Joint Appendix 552 to 555 it is clear that these instructions as detailed within the government and defense instruction package were not given. The first sentence says the government's brief incorrectly states certain facts such as whether the court instructed the jury on reasonable doubt presumption of innocence and burden of proof. Was that raised in your initial brief that issue? I believe I did make reference to the fact that the jury did not get instructions on the reasonable doubt burden of proof and that was one of the issues pertaining to what substantial rights were affected by the judge's actions. If I could just have a second. Here it is. I'm looking at page 21 of your brief. Okay. Thank you. The second sentence says the court further emphasized and shifted the burden to the defense unbeknownst to the defense at the time the reasonable doubt presumption of innocence and burden of proof instructions were removed although they were in the defense and government instructions. I can tell you we're going to need the entire charge. Thank you. Thank you Ms. Crump. Mr. Watson. Thank you. First I'd point out on pages 528 and 529 of the joint appendix relating to the closing argument of the government after the comments about Ms. Bonds, Ms. Falcon and Mr. Wallace who were the three government witnesses having minimal or no criminal history. After that or those comments were made the assistant United States attorney only made four or five or only said four or five more sentences before he sat down. I actually indicated to the judge that I was reluctant to interrupt closing especially when he was ending but would just suggest that that was not an untimely objection of requesting a sidebar four or five sentences after those comments were made in closing. And the court actually said well actually I quoted it earlier but the court then told me I could go ahead and argue to the contrary and I pointed out judge that was something that's inadmissible. I can't argue to the contrary of something that's been introduced to the jury that is these three witnesses have minimal or no criminal history. I don't have any evidence one way or the other because of course no evidence could have been given. It would have been objected to if it had attempted to be given during the course of the trial. So at that point all I could do is then argue to the jury but I can't argue that they do not or do have criminal histories because obviously I don't know one way or the other. And at that point the jury is sitting there believing that they, well I guess not that they don't have criminal histories because the question was an or. They have minimal or no criminal history but at that point in the trial there's simply nothing that could be done to fix that other than of course the judge giving an instruction to the jury to disregard that argument and instructing the jury that they had no evidence in front of them one way or the other as to the criminal histories. Your defense in this case was justification defense? Yes sir. And it was your client that gave the gun? Is that disputed? No sir that was not disputed both Mr. Carter and Mr. Eklund. When did the justification defense arise in that context for the possession charge? The testimony at trial was that Mr. Eklund and Mr. Wallace were in the courtyard and that Mr. Carter my client was nearby but within plain view of the entire situation and that he had been involved in the situation that originally arose between Ms. Falcon and Mr. Eklund and the series of people that Ms. Falcon had brought back to the apartment complex to deal with Mr. Eklund and then finally she brought Mr. Wallace back and that my client was in clear view of what was transpiring between Mr. Wallace and Mr. Eklund that is Mr. Wallace getting out of his car with a handgun and pointing it at Mr. Eklund and at that point and only at that point did he testify and the other defense witnesses testified that he picked up the AK-47 and handed it to Mr. Eklund so that Mr. Eklund could defend himself. And his justification defense was he in danger? His justification defense was dependent on assisting Mr. Eklund who was in danger. And Mr. Eklund was that a relative or a son or a child? I do not believe they are related but they were very close friends. Have you ever seen a case like that one on a justification defense where someone is standing, picks up a gun and he gets the justification defense for I guess a friend or somebody who's in an argument or looks like they're about to get in an argument on a charge of possession? I would have to admit that he is a half step removed from Mr. Eklund as far as the justification defense. I'm talking about your defense. Have you ever seen that one in any court? I mean that doesn't sound like to me you can get that defense for that. I would concede that it is more difficult. It's certainly a more difficult case than Mr. Eklund had but with Mr. Carter. The theory is somebody else is in imminent danger or in possible danger because he perceives this man has a gun and his friend or whomever is standing doesn't and he reaches on the ground. These guns are just laying on the ground and this neighborhood is quite a neighborhood. You just have an AK-47 laying on the ground? That was the testimony at trial. Yes, sir. That he came upon the gun. That he had not possessed it previous to Mr. Wallace getting out of his car and pointing his gun at Mr. Eklund. I would just point out that the only witness that the government had in opposition to what Mr. Eklund Mr. Carter and the other defense witnesses said was Mr. Wallace. Ms. Bonds and Ms. Falcon actually did not testify as to almost well, they certainly didn't testify as to Mr. Eklund having a weapon first. It was only Mr. Wallace who testified to that. But there's no dispute about that evidence you gave there, at least that statement that he just reached down on a gun, picked up a gun. He wasn't in danger himself. He perceived someone else may be in danger. Picked up a gun, for which the charge against him then arises because he is a felon possessing the gun, hands it someone. That evidence is not in dispute. No credibility issue on that, is it? I would just say that he was in the courtyard with somebody getting out of his car pointing a gun at Mr. Eklund. He was not, no dispute, he was not perceived to be in danger. Well, only to the extent of somebody in the general area pulling out a gun and starting pointing it in the general direction of Mr. Eklund. At that point, the testimony was that Mr. Carter and Mr. Eklund were not standing side by side, but they were not too far away from each other. How far? It's hard for me to state. I'm not sure if anybody stated exactly the number of feet at trial. I'm sure it's in the record somewhere, but I would... So you have a defense of others' defense? Exactly. Yes, sir. Well, he was in the general area when the gun was pulled. I would say maybe 10 or 15 feet. It might have been a little bit further. I don't want to misstate the record. But he was assisting Mr. Eklund in addition to that. Thank you, Mr. Morrison. Just to expedite things, Mr. Hatch, you've got a copy of the complete jury charge? Yes, sir. Is there any objection from the defendants to him submitting that, or do you need an opportunity to review it and respond? If you would, just communicate with Mr. Hatch and let us know the results, but we do need copies of an accurate, complete charge in this case. Ms. Crump, Mr. Watson, I appreciate your representing clients in this case. I know how much you're pointed, and we do appreciate your undertaking this representation. I'll ask the clerk to adjourn the court, and then we'll come down and greet counsel. The court stands adjourned until tomorrow morning at 930. God save the United States and this honored court.
judges: William B. Traxler, Jr., James A. Wynn, Jr., Clyde H. Hamilton